UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEBORAH GOFFREDO,
    Plaintiff,

v.

WAL-MART STORES EAST, L.P.,
    Defendant.

No. 3:15-cv-00704 (MPS)

**Ruling on Summary Judgment**

**I.     Introduction**

Plaintiff Deborah Goffredo ("Goffredo") is suing Wal-Mart Stores East, L.P. ("Wal-Mart") for negligence in connection with a slip-and-fall incident on November 10, 2013, at Wal-Mart's store located at 1100 New Haven Road, Naugatuck, Connecticut (the "Store"). Wal-Mart has moved for summary judgment. I DENY Wal-Mart's motion because Goffredo's testimony about the presence of tracks made by a shopping cart in several aisles of the Wal-Mart, including aisles perpendicular to the one she fell in, together with a Wal-Mart employee's statement that he witnessed "a trail of liquid all around the department," when construed in the light most favorable to her, would allow a reasonable jury to infer that Wal-Mart had constructive notice of the condition that caused her fall.

**II.    Facts**

On November 10, 2013, Goffredo was shopping at the Store. After Goffredo had completing her shopping, Goffredo "was getting ready to leave" and "[o]n the way to the checkout" when she slipped on "a blue liquid" that "looked like Dawn or something of that nature." (ECF No. 26-1 at 13-14.) She had been pushing her cart "walking, and [slipped]….within a split second." (*Id*. at 16.) Her "foot locked and slid, and [she] was holding onto the cart to keep [herself] from falling." (*Id*.) But she fell to her knees. After her fall, she

1

noticed "tracks from some type of liquid." (*Id*.at 45.) According to Goffredo, these "tracks [were] going up and down several aisles." (*Id*. at 43.) The tracks in the other aisles ran perpendicular to the aisle Goffredo slipped on. To Goffredo, "it appeared that carts went through the puddle up and down a few of the aisles." (*Id*.) Goffredo did not see the substance (or any substance) prior to her fall. She estimated that the pool of blue liquid measured about six inches in diameter. She noticed the substance only after her fall and did not see any dirt or tracks in the pool in which she slipped.

    At the time of her fall, Goffredo was walking down a main aisle toward the front of the Store. This aisle, known as an "action alley", is "the main walkway through the store" (ECF No. 34-1 at 10), and runs from the back of the Store to the front of the Store where the cash registers are located. Along the aisle where Goffredo fell, there were other aisles that ran perpendicular to it. Her fall occurred near a food display, but there were no displays of any soaps or detergents in the area where the incident occurred. The aisle where Goffredo fell was approximately six aisles away from the household chemicals aisle.

    Goffredo's fall was reported to Willem Hoving, a co-manager of the Store. Hoving went to the scene of the incident, and he recorded his observations in a witness statement dated November 10, 2013. Upon arriving at the scene, Hoving's statement indicated that he "witnessed a trail of liquid around the dep[artment]." (ECF No. 34-1 at 43.) According to Hoving, Goffredo "appeared upset", and she conveyed to him that "she was stiff and uncomfortable." (*Id*.) Hoving directed another Store employee to take Goffredo's statement while he and another Store employee "guarded the spill" until "Joe from maintenance cleaned [it] up." (*Id*.) Before the spill had been cleared, Hoving photographed the incident scene, and Store personnel later confirmed that the blue liquid substance resembled laundry detergent.

Karen O'Connell ("O'Connell") was only several feet away from Goffredo when she fell. She did not see Goffredo fall, but heard her yell, looked toward the noise, and saw Goffredo on her knees on the floor holding the handle of her cart. O'Connell went to assist Goffredo. As O'Connell approached the incident scene, she observed a line of little, light blue dots that resembled drips on the floor behind and in front of where Goffredo fell. After she inquired into Goffredo's welfare, she went to inform a Store manager about the incident. O'Connell conveyed to the Store manager Goffredo's medical needs, but he appeared to be dismissive of what she was saying. O'Connell then left Goffredo with the Store manager. But before leaving, O'Connell offered that she would be willing to make a statement on Goffredo's behalf in connection with the incident and provided Gofrredo with her contact information.

At some time later, Goffredo asked O'Connell to write a letter documenting her observations of the incident. In O'Connell's letter dated February 7, 2014, O'Connell indicated she observed "a blue substance" on "the floor where [Goffredo] had slipped", and as she "looked around on the floor, the blue substance could be seen as a path of spots." (*Id*. at 55.) The letter further indicates she informed the Store manager about the "trail of liquid substance spots" and that he should have Store employees clean up the trail. (*Id*.) O'Connell did not recall any dirt, discoloration or other tracks in the substance other than where Goffredo had slipped in it. O'Connell concluded that the substance had leaked from a container being transported through the aisle by another customer based on the substance's appearance and location.

On the date of the incident, Wal-Mart had "Slip, Trip and Fall Guidelines" in effect for its employees "to prevent slips, trips and falls within a facility." (ECF No. 34-1 at 50.) As part of these guidelines, "[a]ll associates ha[d] a responsibility to conduct periodic safety sweeps." (*Id*. at 51.) A "safety sweep" consisted of "periodically walking a department or area, checking the

conditions for safety and cleanliness, and providing a quick clean." (*Id*. at 46.) The guidelines instructed Store employees to:

> [p]erform a visual sweep of the area looking for potential hazards, such as falling merchandise, empty pallets, spills, unattended pallet jacks, debris, and empty boxes.
>
> [d]ust mop or broom sweep high traffic areas including but not limited to: action alley, frontend, personal care, household chemicals, backroom, fresh areas. . . sidewalks, and the vestibule.
>
> [w]atch for and correct potential hazards…

(*Id*. at 51.) According to Hoving, Store employees had a responsibility to conduct "safety sweeps" every hour. (*Id*. at 9.) Under Wal-Mart's corporate policy at that time, the completion of "safety sweeps" by maintenance employees was recorded in a handwritten log that was checked daily. (*Id*. at 27.) The logs detailing the "safety sweeps" from the date of the incident have been shredded in accordance with Wal-Mart's document retention policy. (*Id*. at 28.) Furthermore, the guidelines provided that Store employees were to set cones near spills.

Goffredo claimed that the fall caused her intense pain, including severe burning and numbing sensations in her right leg. (ECF No. 26-1 at 14.) She testified that the pain is recurring, with the severity of the pain depending on her level of activity. (*Id*. at 14.) As a result of her injury, Goffredo testified that she struggles to navigate the stairs and has difficulty doing yard work. (*Id*. at 21-22.)

### III.   Legal Standards

#### A.  Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. Pro. 56(a)). "In making that determination, a court must view the evidence in the light most favorable to the opposing party."

4

*Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America,* 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006)(internal quotation marks and citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996) (citations omitted).

### B. Premises Liability

Under Connecticut law, "[a] business owner owes its invitees a duty to keep its premises in a reasonably safe condition." *DiPietro v. Farmington Sports Arena, LLC,* 49 A.3d 951, 957 (Conn. 2012)(quotation marks omitted). "Nevertheless, for a plaintiff to recover for the breach of a duty owed to him as a business invitee, it is incumbent upon him to allege and prove that the

defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it." *Id.* (quotation marks and alteration marks omitted). "[T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it." *Id.*

"To defeat a motion for summary judgment in a case based on allegedly defective conditions, the plaintiff has the burden of offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice." *Id.* "[T]o charge a defendant with constructive notice it is incumbent on the plaintiff to establish that the defect had been there a sufficient length of time and was of such a dangerous character that the defendant by the exercise of reasonable care could and should have discovered and remedied it." *Lombardi v. Town of E. Haven,* 12 A.3d 1032, 1040 (Conn. App. 2011). However, "[w]hat constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." *Considine v. Waterbury*, 279 Conn. 830, 870 (2006)(internal quotation marks and citation omitted). "[U]nless the period of time is such that but one conclusion could be found, its determination should be left to the trier." *Baker v. Ives*, 162 Conn. 295, 307 (1972).[1]

---

[1] I note that neither side has suggested that a "mode of operation" theory applies in this case. Such a theory "allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition" and applies to "premises liability claims brought by business invitees seeking compensation arising out of a business owner's self-service method of operation." *Kelly v. Stop and Shop*, *Inc.* 281 Conn. 768, 777, 786 (Conn. 2007). In *Fisher v. Big Y Foods, Inc.*, 298 Conn. 414, 424, 437 (Conn. 2010), the Connecticut Supreme Court held that the "mode of operation rule, as adopted in Connecticut, does not apply generally to all accidents caused by transitory hazards in self-service establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some

## IV. Discussion

### A. Actual Notice

Goffredo apparently concedes that there is no evidence of actual notice here because she does not raise the argument in her memorandum. Even if Goffredo were to contest that issue, there is nothing in the record to support the assertion that Wal-Mart actually knew of the alleged defect or that the Store employees created the alleged defect.

### B. Constructive Notice

The only issue, then, is whether there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the defect that Goffredo claims caused her injury. Wal-Mart argues that Goffredo has presented no evidence of the length of time the alleged defect – the blue, soapy liquid – was on the floor and therefore cannot establish constructive notice.

Contrary to Wal-Mart's assertion, there is evidence from which a reasonable juror could conclude that the alleged defect was on the floor for enough time that Wal-Mart, in the exercise of reasonable care, should have known of it. Goffredo testified that, immediately after her fall, she saw "tracks from some type of liquid." (ECF No. 34-1 at 4.) She further testified that "[t]here were tracks [of the blue substance] going up and down *several* aisles" and that it "appeared that carts went through the puddle and up and down a few of the aisles." (ECF No. 26-1 at 43)(emphasis added.) Recounting his observation of the incident scene, Hoving wrote in his witness statement that he saw a "trail of liquid around the dep[artment]." (ECF No. 34-1 at 43.) Hoving's witness statement about the "trail of liquid" is consistent with his testimony when he was asked at his deposition about the placement of pairs of cones next to aisles adjacent to the

---

specific method of operation employed on the premises," and that this rule is "meant to be a narrow one." *Fisher v. Big Y Foods, Inc.*, 298 Conn. 414, 424, 437 (Conn. 2010).

spill as shown to him in a photograph dated November 10, 2013. (ECF No. 34-1 at 19). At his deposition, Hoving testified that placement of the cones could indicate the trail of liquid throughout the department that he had referenced in his witness statement. (*Id*. at 13-14.) In her letter, O'Connell observed that she saw "a path of spots" and a "trail of liquid" around the department and had informed a Store manager that the Store employees should clean up the area.[2] (*Id.* at 55.) Moreover, there was evidence that Goffredo's fall occurred in the food department, which was six aisles away from the household chemicals department. A reasonable juror could conclude from the evidence of a "trail of liquid" in multiple aisles that enough time had passed since the container began leaking from a cart being pushed through the aisles that a Wal-Mart employee should have noticed it prior to Goffredo's fall. *See e.g.*, *Schwarz v. Waterbury Pub. Mkt., Inc.,* 6 Conn. App. 429, 432–33 (1986)(finding there was legally sufficient evidence of constructive notice to sustain a jury verdict in plaintiff's favor where there was evidence, among other things, that there was a trail of spilled milk covering six aisles in a supermarket at the time of plaintiff's fall). Further, as noted, under Wal-Mart policy, "[a]ll [Store employees] ha[d] a responsibility to conduct periodic safety sweeps" and Store employees had to [w]atch for and correct potential hazards" such as spills. (ECF No. 34-1 at 51.)

  Wal-Mart argues that there is not constructive notice because there is no evidence of the very defect which occasioned the injury. (ECF No. 27 at 16.) Specifically, Wal-Mart focuses on Goffredo's testimony that she observed tracks of "some type of liquid" in other aisles, which it argues is insufficient to create a genuine issue of material fact as to notice. (*Id*.) At her deposition, however, Goffredo testified that she observed the blue liquid in which she slipped in

---

[2] It is also true that at her deposition, O'Connell testified to seeing the blue substance only in Goffredo's immediate vicinity. But to the extent her testimony contradicts that of Goffredo's, I must accept Goffredo's testimony for purposes of this motion. *See Caronia*, 715 F.3d at 427.

other areas of the Store, noting that "[t]here were tracks going up several aisles." (ECF No. 26-1 at 43.) She also testified that "it appeared that carts went through the puddle up and down a few of the aisles." (*Id*.) Unlike the plaintiff in *Gomes v. U.S.*, No. 11-cv-1825, 2012 WL 5869801 (D. Conn. Nov. 19, 2012) – relied on by Wal-Mart to support this argument – Goffredo certainly has presented more than a "scintilla of evidence that the [substance] on which [s]he claims to have slipped….[was] the same [substance]" in the other aisles. *See Gomes v. U.S.*, No. 11-cv-1825, 2012 WL 5869801, at * 7 (D. Conn. Nov. 19, 2012).

Wal-Mart also argues that based on the video footage of the incident, the Court should draw the inference that the blue liquid was on the floor, at most, for four minutes prior to Goffredo's fall. (ECF No. 27 at 15.) The Court notes that in its exhibits to its motion for summary judgment, Wal-Mart labeled Exhibit F as the "Store Video." Wal-Mart, however, did not upload the video to the docket, provide Chambers a copy of the video, or manually file the video with the Clerk's office. Therefore, the "Store Video" is not part of the summary judgment record, and the Court may not consider it in ruling on Wal-Mart's motion for summary judgment. In any event, especially because the video was described in a deposition as "grainy" and not clear enough for at least one witness to discern locations depicted in the video, (ECF No. 34-1 at 23-24) even if the video is as Wal-Mart describes it, Goffredo's testimony about seeing the blue liquid in several aisles would be sufficient to raise a triable issue of fact

**V.     Conclusion**

Because there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the alleged defect that caused Goffredo's fall, I DENY Wal-Mart's motion for summary judgment.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	February 22, 2017